# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 4926 | **DATE** | 10/15/2012 |
| **CASE TITLE** | Papastefan vs. Triad Consulting Services | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in the Statement section of this order, "Defendant Wallace's Motion to Dismiss' [19] is denied. Plaintiff Papastefan's Motion for Leave to File Third Amended Complaint [39] though opposed [41] is granted. Third Amended Complaint to be filed by October 17, 2012. Defendants' Answers to Third Amended Complaint are due on or before November 16, 2012. Counsel for all parties are requested to meet pursuant to Rule 26(f) and jointly file a Form 52 on or before November 20, 2012. This case is set for a report on status and entry of a scheduling order on November 27, 2012 at 9:00 a.m. The parties are encouraged to discuss settlement.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

In her three-count Second Amended Complaint and her proposed Third Amended Complaint, plaintiff Zofia Papastefan ("Papastefan") alleges that her former employer, defendant Triad Consulting Services ("Triad"), is liable for sexual harassment in violation of Title VII of the Civil Rights Act of 1964 (Count 1) and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Count II), and that defendant Steve Wallace ("Wallace") is liable for intentional infliction of emotional distress ("IIED") (Count III). Pending before the court is "Defendant Wallace's Motion to Dismiss," (Dkt. No. 19), in which Wallace argues to the court that Papastefan "has not and cannot plead a claim for IIED." (Dkt. No. 19 ("Def.'s Mot") at 2.)

Background

When ruling on a motion to dismiss, the court accepts the factual allegations set forth in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010). The following background facts are therefore set forth as alleged in Papastefan's Second Amended Complaint. (Dkt. No. 18.)

Triad provides building maintenance services to businesses and government entities. (2d Am. Compl. ¶ 5.) In January 2007, Triad entered into a contract with the City of Chicago Department of General Services to provide custodial and janitorial services to City of Chicago facilities. (*Id.* ¶ 6.)

Papastefan was employed by Triad from January 1, 2007 through February 28, 2011. (*Id.* ¶ 8.) During this time period, Papastefan was assigned to perform custodial and janitorial services at the City Hall location. (*Id.* ¶¶ 11, 14.)

**STATEMENT**

Triad did not provide changing rooms for its employees. (*Id.* ¶ 16.) Plaintiff's proposed Third Amended Complaint" amends her allegations to state that Triad did not provide *satisfactory* changing rooms for its employees. This proposed change does not materially affect the allegations regarding Wallace.

Wallace, a City of Chicago employee with an office at City Hall, offered Papastefan his office as a private changing room, and Papastefan used Wallace's office from time to time for changing into her work attire. (*Id.* ¶¶ 12, 15-16.) While Papastefan dressed for work, Wallace secretly took seminude pictures of her with his cell phone. (*Id.* ¶ 15.) Papastefan became aware of the pictures in August 2010, when Sarah M. Hofsommer, a City of Chicago Investigator Specialist from the Inspector General's Office, "alerted her to the fact." (*Id.* ¶¶ 17, 19.) Papastefan was forced to continue working at the City Hall location for the next six months, cleaning Wallace's office on a regular basis, before being suspended from her employment with Triad on February 28, 2011. (*Id.* ¶¶ 21-22, 30.) Papastefan "did not welcome Wallace's harassment and found it to be horribly offensive." (*Id.* ¶ 18.) She was "devastated" when she found out about the seminude pictures Wallace had taken of her, and "suffered emotional distress as a result of [Wallace's] actions." (*Id.* ¶¶ 17, 48.)

Legal Standard

Rule 8 of the Federal Rules of Civil Procedure requires complaints to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (quoting *Twombly*, 550 U.S. at 570). A complaint is sufficient if it gives "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010). On the other hand, a plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823 (7th Cir. 2011).

The tort of intentional infliction of emotional distress includes the following elements: (1) "the conduct involved must be truly extreme and outrageous"; (2) "the actor must either *intend* that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress," and (3) "the conduct must in fact cause *severe* emotional distress." *McGrath v. Fahey*, 533 N.E.2d 806, 809 (1988) (emphasis in original).

Analysis

For the most part, Wallace's arguments are based on details not included in the Second Amended Complaint, including the size of Wallace's office, that Wallace's office was shared by other individuals, that Papastefan changed in Wallace's office during business hours, and that Wallace's office was "unlocked and unguarded." (Def.'s Mot. at 2-3.) Wallace's argument that Papastefan did not enjoy a reasonable expectation of privacy under these circumstances therefore exceeds the proper focus of a motion to dismiss. *See* Fed. R. Civ. P. 12(d).

Wallace's only remaining argument is that "Plaintiff will never be able to allege that [Wallace] took the pictures, let alone disseminated the pictures, with the intent to inflict severe emotional distress," because "there is no evidence that Defendant Wallace's conduct was intended to reach the Plaintiff." (Def.'s Mot. at

**STATEMENT**

3; Dkt. No. 38 ("Def.'s Reply") at 4.) In other words, because Wallace did not intend to get caught, he lacked the requisite mens rea to support Papastefan's IIED claim. This argument, too, depends on development of the factual record. Papastefan has alleged that Wallace knew that his actions "had a high probability of causing Plaintiff severe emotional distress." (2d Am. Compl. ¶ 46.) Whether Wallace's actions in taking the pictures lead to a high probability of causing Papastefan severe emotional distress, and whether Wallace knew about this likely result, depends entirely upon the circumstances under which Wallace took the pictures and what he did with the pictures after taking them. The argument now raised by Wallace is better addressed at the conclusion of fact discovery, when the court and the parties will have the benefit of a fully-developed record.

Conclusion

At this stage of the litigation, accepting the allegations of Papastefan's Second Amended Complaint as true, the court finds that Papastefan has alleged a plausible right to relief on her claim for intentional infliction of emotional distress. Accordingly, Wallace's motion to dismiss (Dkt. No. 19) is denied.